MCCRACKEN v. MACNEAL.

WATERS AND WATERCOURSES — PRESCRIPTION — DRAINS AND DITCHES—NOTICE.

Where defendant testified that she did not know of a tile drain across her lands, which was not open to view and was laid with the alleged consent of her father when he occupied the premises as a tenant, but without defendant's permission, the user was not so open and adverse as to create a prescriptive right.

Appeal from Oakland; Lamb, J., presiding. Submitted January 10, 1912. (Docket No. 36.) Decided March 29, 1912.

Bill by Olive E. McCracken against Edward MacNeal and Jane MacNeal for an injunction and other relief. From a decree for complainant defendants appeal. Reversed.

*Clarence Tinker*, for complainant.

*George F. MacNeal* and *Rockwell & Zimmermann*, for defendants.

Moore, C. J. This is a bill filed to enjoin defendants from interfering with the flow of water through a tile drain from the lands of the complainant to defendant's land through the land of defendants, and to recover damages for such interference. From a decree in favor of the complainant, the case is brought here by appeal.

A reference to the accompanying sketch will aid in understanding the situation.

It is claimed that complainant has a right to drain the land of complainant across the land of defendant, first, because it is a natural way for the water to run, and, second, because of a right to an easement gained by prescription. The trial judge found against the first contention, but in favor of the second one. That a right to an easement, like a drain, can be gained by prescription is no longer open to question. See *Covell* v. *Bright*, 157 Mich. 419 (122 N. W. 101); *Menter* v. *First Baptist Church*, 159 Mich. 21 (123 N. W. 585), and *Dummer* v. *Gypsum Co.*, 153 Mich. 622 (117 N. W. 317), where there is a very full collation of the authorities.

The important question is one of fact. The case established by the proofs introduced upon the part of the complainant is that when Mr. Pratt, the father of the defendant Mrs. MacNeal, was in possession, as a tenant, of the lands belonging to defendant, about the year 1880, an arrange-

ment was made between the father of complainant, then ·owner of the lands now owned by her, and Mr. Swartout, who owned the farm east of complainant, and Mr. Pratt, by which it was agreed that a tile drain might be constructed as shown by the plat, and that it was laid and

used until a few years before this bill was filed. The record shows that this was a covered drain, over which crops were grown; and we have searched in vain for anything in the record which will show that the ground presented any such appearance as to indicate where the drain was

laid, or that a drain was in existence, to any one who had
not seen it laid. The most favorable testimony to which
diligent counsel for complainant is able to call our atten-
tion will be mentioned later.

We quote from the brief:

"The testimony of Jane MacNeal shows that at the
time the drain was constructed, her father, G. K. Pratt,
had full charge of the place; her language being:
' Father looked after the place as though it were his own.'
These facts constituted Mr. Pratt her agent, and when he
gave his authority to Benjamin McCracken to construct
the drain, it was practically the authorization of the de-
fendant in this case."

Turning to the record, to which reference is made by
counsel, we find the following:

"No, sir; I never gave any one any authority to put
a drain through my land, and I never heard there was
one put in there. Since 1903, there had been a great deal
of talk about it, and I have heard about it; but previous
to that time I knew nothing about it."

Cross-examination by Mr. Tinker:

"My father's name was G. K. Pratt. At the time of
his death, he lived on the Russell place; he sold it in
March before he died the 9th of May. He was still in
possession. No, sir; I did not reside with my father at
that time. I lived downtown. I was up there as fre-
quently as I could be; for he was poorly. He died May
9, 1881. That was after he sold to Russell; father hadn't
given up possession. I don't know the date of the deed.
We were quite a while settling up his affairs. Occasion-
ally I would be out to father's while I was living down-
town. I was building my house and looking after that.
We came to Fenton in 1880, and moved into the house in
the fall of 1881, and went West in 1882; we were there
from 1880 to 1882. Yes; when we were absent in '77–'79,
father looked after the place as he would his own. There
was no agreement made what we were going to have, or
anything about it; we simply wanted him to care for the
farm until such time—"

Redirect examination by Mr. MacNeal:

169 MICH.—27.

" He didn't have any contract, or anything of the kind; he took care of it, took charge of it—just the land. He raised the crops until we could get— He was practically my tenant, like any other man. He had no authority whatever. He never told me anything that was going on around there; it was too far away. I mean that, as far as looking after the crops and things, he was attending to them."

We think the testimony does not sustain the contention of counsel. Both defendants swear positively that they had no knowledge of the existence of the drain until about 1903, when it got out of repair at the highway upon the north of their premises and flooded their barnyard.

It is their further contention that they then supposed that the water which came boiling up was a spring, and that, when they learned it was a blind drain coming from the land of complainant, they sent word to complainant to repair it; that, she failing to do so, they were compelled to do just what they did do to prevent their land from becoming worthless. We think complainant has failed to show such knowledge on the part of defendants, either actual or because of open and adverse user, presumptive, as would entitle her to relief.

The decree is reversed, and the bill of complaint dismissed, with costs of both courts.

STEERE, MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.