# STATE OF MICHIGAN

# COURT OF APPEALS

BROOKFIELD EAST LANSING, LLC,

Plaintiff-Appellant/Cross Appellee,

v

125 N. HAGADORN, LLC,

Defendant-Appellee/Cross
Appellant.

UNPUBLISHED
June 28, 2016

No. 325956
Ingham Circuit Court
LC No. 13-000221-CZ

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

In this equity action, both parties appeal the trial court's resolution of defendant's requests for certain easements burdening plaintiff's property. The trial court awarded defendant a 24-foot wide easement over an alley on plaintiff's property adjacent to defendant's property, and it denied defendant's request for an easement for access to a water line running under plaintiff's property. Plaintiff appeals the former by right, and defendant cross-appeals the latter. We affirm.

## I. BACKGROUND

Plaintiff and defendant are owners of adjacent parcels of real estate. Plaintiff's property, Brookfield Plaza, is a strip mall located approximately at the corner of East Grand River Avenue and North Hagadorn Road in East Lansing, Michigan. Defendant's property is an apartment building located immediately to the North of Brookfield Plaza along Hagadorn Road; it is bounded to its North by Old Canton Road. An alley runs between the apartment building and the strip mall on plaintiff's property. It is undisputed that no written easement or license to use the alley by any other entity has ever been found. Historically, water service to the apartment building was by a tap into the water line serving Brookfield Plaza, a fact unknown to the parties until an emergency repair was required to the line in 2010.

At one time, West Brookfield Development Company (WBDC) owned both parcels. In May of 1957, defendant's parcel was conveyed to Harold Hodge, an officer of WBDC. Brookfield Plaza was apparently constructed that same year, and the apartment building was constructed in 1958. Hodge sold the apartment-building parcel to a fraternity in 1959. The apartment-building property changed hands several times after that, but around 1979 it was

-1-

purchased by a partnership related to defendant; defendant became the owner in 1997. Plaintiff purchased the Brookfield Plaza property from WBDC in 1998. Testimony at trial suggested that the private water line was most likely installed in the late 1950's, at which time a public water main had been installed under Old Canton Lane.

One of defendant's members, Gary Theis, testified that defendant's members bought the apartment building property in the early 1980s and that the tenants use the alley to access the dumpster and some parking spaces in the building's lot. Some of the parking spaces are *only* accessible by using the alley. Theis stated that defendant had been using plaintiff's property this way since it acquired the apartment building. He explained that a drawing he had been given by the previous owners showed the location of parking and rubbish disposal and identified the strip of property south of the parcel as an "alley," so he had thought it was a public way. Nevertheless, plaintiff had posted signs on the strip of land which stated, "Parking while shopping only" and "Deliveries only." Plaintiff's agent, Sandy Hanson, testified that plaintiff's tenants use the strip of land for parking, deliveries, and garbage pickup. She further testified that members of the public, driving both directions, use it as a cut-through to avoid traffic lights or to get to the businesses on the property. An architect who had worked on plaintiff's property asserted that the standard width for a passageway for vehicles is 10 to 12 feet, but that such a narrow passageway would not allow for two-way traffic. Defendant had a survey prepared that showed an easement 24 feet wide.

This dispute arose in 2010 when plaintiff had to shut off its water to make an emergency repair, and the parties discovered that the same private water line served defendant's property and one other adjacent property. Plaintiff requested the other owners to pay their share of the water line repair expenses or to arrange for their own connections to the municipal water service; the non-party owner did both, but defendant did neither. Plaintiff then sought from the trial court a declaratory ruling that defendant had no right to its water line and that plaintiff could remove defendant's connection to its water line. The parties initially also disputed a sewer connection, but they resolved that issue prior to trial.

An expert appraiser testified that granting defendant an easement would reduce the value of Brookfield Plaza by $35,000 but that the value to defendant's property would be "much greater." Expert testimony at trial established that it could cost defendant $12,000 to construct its own waterline and connect it to the public water main running to the north of defendant's property, including the city's connection fee of around $3,000.

At a hearing on plaintiff's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), which sought a declaration of the parties' rights prior to the bench trial, the court found that defendant had "established the existence of a prescriptive easement for access to its parking and dumpster service." Regarding water and sewer service,

the court found no easement implied by necessity but that an issue of material fact remained as to whether defendant had an easement implied from prior use.[1]

After a bench trial, the court concluded that the prescriptive easement for access was 24 feet wide and 191.69 feet long—the full extent of the space behind plaintiff's strip mall—because trial testimony indicated that people traveled the strip of property in both directions and defendant's tenants had enjoyed unrestricted use of the way in the past. As for the water line, the court found there was no easement implied by prior use because there was no unity of title at the time the line was installed and no necessity because $12,000 was not an unreasonable burden for establishing water service to an apartment building. The trial court also found no prescriptive easement for the water line because there was no evidence of hostile possession before 1998; between 1998 and 2010 no owner of either parcel was aware of the way the apartment building received its water; and the use was not visible, open, or notorious.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(10). *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). "In a MCR 2.116 C(10) motion, testing the factual sufficiency of the complaint, we consider the substantively admissible evidence actually proffered in opposition to the motion. Thus, when such a motion is properly brought, the nonmovant must . . . produce admissible support for its opposition in order to defeat the motion." *Id.* at 120 (citation and internal quotation marks omitted). The existence of a prescriptive easement is a matter of equity, also reviewed de novo. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). A trial court's factual determinations after a bench trial are reviewed for clear error. MCR 2.613(C); *Grand/Sakwa of Northfield, LLC v Northfield Twp*, 304 Mich App 137, 144; 851 NW2d 574 (2014). A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made. *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 693; 760 NW2d 574 (2008).

### B. THE EASEMENT

A prescriptive use of land . . . is either:

(1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or

---

[1] On appeal, defendant does not argue that the trial court erred in concluding there was no easement by necessity.

(2) a use that is made pursuant to the terms of an intended but imperfectly created servitude, or the enjoyment of the benefit of an intended but imperfectly created servitude. [1 Restatement Property, 3d, Servitudes, § 2.16, pp 221-222.]

Consistent with these classifications,

[a]n easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. MCL 600.5801(4). The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement. [*Mulcahy*, 276 Mich App at 699 (citations and internal quotation marks omitted).]

"Mere permissive use of another's property, however, will not create a prescriptive easement." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). "[W]here a private way is improved by the owner and left open convenient for others, their use of it in common with the owners and those for whose special benefit it was opened is, as a rule, to be regarded as permissive only, and under an implied license." *Le Roy v Collins*, 176 Mich 465, 472; 142 NW 842 (1913). The use must be claimed as a right that "does not depend on a like right in others." *Outhwaite v Foote*, 240 Mich 327, 329; 215 NW 331 (1927). However, mutual use by both the landowner and the party claiming the easement does not prove the use was permissive. *Plymouth Canton*, 242 Mich App at 679-680.

Plaintiff asserts that defendant's use of the alleyway was no different than that of the general public. However, defendant's use differs from that of the general public in that it depends on using the alleyway for access to some of its parking spaces and its dumpster. Further, were plaintiff to block off the alleyway, the public would probably find an alternate pathway; it is unlikely a member of the general public would assert there was in fact a public way there. And Theis's testimony that he thought the alleyway was public supports defendant's argument that it acted under the belief that it had a right to use the alleyway. There is no dispute that the other elements—open, notorious, and continuous for 15 years—were satisfied by defendant's and its predecessors' use of the alleyway. Thus, the trial court did not err in finding that defendant had a prescriptive easement to use the alleyway.

The trial court also correctly determined the scope of that easement.

A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment. One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances. [*Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 271; 739 NW2d 373 (2007) (internal citations omitted).]

In this case, the testimony supported the trial court's finding that the alleyway had been used for two-way passage. Specifically, plaintiff's agent testified that vehicles drove in either

direction down the alleyway and she was unaware of any complaints about the way being blocked. A reasonable inference from this evidence is that vehicles use the full width of the alleyway to get around parked vehicles and trucks making deliveries. The trial court's refusal to limit the easement to a 12 foot width appears to conform to the manner the easement was used at the time it was acquired, and this finding of fact cannot be said to be clearly erroneous.

## C. THE PIPELINE EASEMENT

Defendant first argues that although Michigan caselaw indicates that "unity of title" is required to establish an easement implied from prior use, applying a "unity of control" test would better achieve the purposes of such easements.

Implied easements, which are distinct from easements by prescription, can arise in two ways: an easement can be implied by necessity or an easement can be implied when property either burdened with or served by a quasi-easement is severed and conveyed to another. *Schmidt v Eger*, 94 Mich App 728, 732-733; 289 NW2d 851 (1980). Defendant is arguing that its property was not severed from plaintiff's property until Hodge sold the parcel to the fraternity in 1959, which was after the water line was put in and the quasi-easement established. To establish the existence of an implied easement,

> "three things must be shown: (1) that *during the unity of title* an apparently *permanent and obvious servitude* was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits." [*Charles A Murray Trust v Futrell*, 303 Mich App 28, 42; 840 NW2d 775 (2013), quoting *Schmidt*, 94 Mich App at 731 (emphasis added).]

This Court is bound by this precedent. MCR 7.215(J)(1). In any event, we are also unpersuaded that Hodge and WBDC can or should be treated as functionally the same entity, which would also contravene Michigan law. See *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 500-501; 776 NW2d 387 (2009).

Moreover, there was no evidence presented regarding Hodge's relationship with WBDC or Hodge's knowledge of the location of the pipeline. In this case, the deed from WBDC to Hodge for what was to become defendant's parcel was signed on behalf of WBDC by both Hodge and WBDC's president, Robert L. Slider, so defendant's assertion in its brief on appeal that "Hodge [conveyed the apartment building parcel] to himself" is not entirely accurate. Further, such an act would be contrary to established caselaw. See, e.g., *Pikes Peak Co v Pfuntner*, 158 Mich 412, 416; 123 NW 19 (1909) ("An agent authorized to sell cannot sell to himself.").

Defendant also relies on assertions and presumptions that are not supported by evidence of record. For example, defendant asserts, "Hodge chose to connect the Apartment Building to Brookfield Plaza's Waterline." However, there is nothing in the record to show Hodge made such a choice. Further, defendant's contention that it can be presumed that it was the intent of Hodge and WBDC that the apartment building have an easement to use the water line is

undermined by the fact that the apartment building did not exist at the time WBDC conveyed the parcel to Hodge. As noted, Hodge and WBDC are distinct entities, as well.

Defendant also argues that an easement in the pipeline was created by prescription. For an easement by prescription to develop, the use by defendant's property must have been open or notorious, adverse, and continuous for a period of 15 years. MCL 600.5801(4); *Mulcahy*, 276 Mich App at 699. The element of "adverse," or "hostile," does not require ill will but rather a use that is inconsistent with the property rights of the owner, such as a trespass or nuisance. *Plymouth Canton*, 242 Mich App at 681. We disagree with the trial court's finding that there was no hostile use: the apartment building made use of the water line for at least 50 years, so plaintiff had the burden of establishing that the use was permissive. See *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985). The same lack of evidence regarding WBDC's knowledge or intent precludes this. Although "at least one officer of WBDC had actual knowledge of the water lines," there was no evidence that this knowledge was related to the officer's scope of his duties and thus it cannot be imputed to WBDC itself. See *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214; 476 NW2d 392 (1991). Because the length of time itself was evidence that gave rise to a presumption of hostility, the trial court erred.

However, the evidence is insufficient to support a finding that the pipeline was open or notorious.

> Uses that are not visible or apparent are seldom open. Underground uses and slight intrusions on the surface, or above the ground, are not open unless a reasonably diligent landowner would become aware of them. However, if the installation of underground utilities is open and their location remains notorious, either because actually known to the owner or widely known in the community, the prescriptive period will continue to run even though evidence of the use is subsequently buried. [1 Restatement Property, 3d, Servitudes, § 2.17, comment *h*, p 273.]

In *Defnet v City of Detroit*, 327 Mich 254, 256-257; 41 NW2d 539 (1950), the servient estate owners were damaged by Detroit's sewer line, which they had been told was blocked off, but which in fact still functioned. The Court held, "No prescriptive right was acquired by the city because its adverse use could not have begun until 1944, when the Defnets first learned of the existence of the active sewer." *Id*. at 258. Similarly, in *Covell v Bright*, 157 Mich 419, 424; 122 NW 101 (1909), the Court held that a buried drain field, of which the servient landowner was unaware, did not satisfy the element of being "apparent." *McCracken v MacNeal*, 169 Mich 414, 418; 135 NW 461 (1912), involved a similar buried drain field ("We think complainant has failed to show such knowledge on the part of defendants, either actual or because of open and adverse user, presumptive, as would entitle her to relief."). Likewise, in this case, there was no evidence that the water line's encroachment onto plaintiff's property was apparent from the surface, or indeed that anything about the water service to either parcel was anomalous. Thus, it was not "open," and it could only satisfy the requirements of a prescriptive easement if it was "notorious."

Defendant presented no evidence that people in the community would have reason to know that defendant's water line connected to city water service through plaintiff's private line.

At trial, there was testimony that the private water was most likely installed in the late 1950s. At around the same time, a public water main was installed under Old Canton Lane, which runs adjacent to defendant's property. Defendant presented no evidence that people in the community would have reason to know that defendant's water line connected to city water service through plaintiff's private water line as opposed to the public line adjacent to its property.

Thus, the only way the water line connection can be found to be notorious is if the landowner, WBDC, had actual knowledge of it. Defendant asserts that Hodge knew about it, and WBDC knew of it through him. As noted, the knowledge of employees and officers can be imputed to the corporation to the extent that knowledge was acquired within the scope of their duties. *Upjohn Co*, 438 Mich at 213-214. Here, Hodge did not testify or execute an affidavit, nor did he leave any records that were admitted; whether he knew about the water line is pure speculation, and even if he did, what he thought about it would be equally speculative. While it is possible that Hodge knew about the water line, it is just as possible that Hodge was not present while the building was being built or the utility lines were put in.

Moreover, even if he knew, if he connected the lines without WBDC's knowledge and consent, he would be acting outside the scope of his duties as an officer of the corporation and solely for his own benefit. In such a situation, his knowledge cannot be imputed to WBDC. See *Upjohn Co*, 438 Mich at 213-214. " 'The general rule which imputes an agent's knowledge to his principal is subject to an exception where the agent acts in his own interest, adversely to his principal.' " *New Properties, Inc v George D Newpower Jr, Inc*, 282 Mich App 120, 134; 762 NW2d 178 (2009), quoting *Nat'l Turners Bldg & Loan Ass'n v Schreitmueller*, 288 Mich 580, 586; 285 NW 497 (1939). Finally, the deeds from WBDC to Hodge identify the sewer easement that WBDC retained in those properties but are silent regarding the water line, which likely did not exist at the time of those conveyances. Thus, there is no evidence that the connection was contemplated by the parties.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola