ORION CHARTER TOWNSHIP v BURNAC CORPORATION

Docket Nos. 104987, 105542. Submitted June 20, 1988, at Detroit. Decided September 8, 1988. Leave to appeal denied, 431 Mich 877.

Orion Charter Township brought an action in the Oakland Circuit Court against Preferred Realty Company, Inc., and others to abate a nuisance. The court granted judgment for plaintiff. The Court of Appeals in an unpublished opinion per curiam, decided October 3, 1984 (Docket No. 68182), affirmed. Burnac Corporation and Appeal Investments Limited, owners of the nuisance, brought an action in federal court seeking a declaratory judgment that they had been denied due process by not being named in the state action. The federal court permanently enjoined enforcement of the judgment for plaintiff until Burnac and Appeal Investments were afforded due process. Orion Charter Township brought an action against Burnac, Appeal Investments and others in the Oakland Circuit Court to abate the nuisance. The court ordered certain things to be done or the nuisance could be abated by demolition. Defendants did not comply and the court, Hilda R. Gage, J., entered an order permitting demolition. Defendants appealed.

The Court of Appeals *held:*

1. An equity court has the power to enjoin a nuisance. However, it is the policy of the courts to tailor the remedy to the problem and, where possible, to abate the nuisance without completely destroying legitimate activity.

2. The court's finding of a nuisance was not clearly erroneous.

3. The remedy of demolition was not inappropriate under the circumstances.

4. Defendants were not denied due process. One entitled to due process is entitled to (1) notice of the time and place of hearing, (2) a hearing before a properly authorized body, (3) a

REFERENCES

Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 4, 140 *et seq.*
Am Jur 2d, Equity §§ 244, 266, 267
Am Jur 2d, Nuisances §§ 12, 13, 145, 150-162, 175, 177-180, 183, 203
See the Index to Annotations under Equity; Nuisances.

reasonably definite statement of the charge or charges against him, (4) the right to cross-examine adverse witnesses, (5) the right to produce witnesses in his own behalf, and (6) a full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had.

5. Plaintiff's claim was properly not dismissed for not being asserted as a compulsory counterclaim in the federal action. Plaintiff's claim was not a compulsory counterclaim in the federal action.

Affirmed.

1. EQUITY — APPEAL.

The findings of a court of equity are reviewed de novo by the Court of Appeals and will be sustained on appeal unless the Court of Appeals becomes convinced that had it heard the evidence in the first instance it would have been compelled to rule to the contrary.

2. NUISANCE — EQUITY — ABATEMENT OF NUISANCES.

An equity court has the power to enjoin a nuisance; however, it is the policy of the courts to tailor the remedy to the problem and, where possible, to abate the nuisance without completely destroying legitimate activity.

3. NUISANCE — NUISANCE PER SE — NUISANCE IN FACT.

The distinction between a nuisance per se and a nuisance in fact is an evidentiary one; a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under all circumstances; a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law and at that point a defendant's liability is established; by contrast, a nuisance in fact is an act, occupation, or structure which becomes a nuisance because of circumstances and surroundings and whether or not a particular thing is a nuisance in fact is to be resolved by the trier of fact.

4. CONSTITUTIONAL LAW — DUE PROCESS.

Due process of law requires notice and opportunity to be heard and imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence.

5. CONSTITUTIONAL LAW — DUE PROCESS.

One entitled to due process is entitled to (1) notice of the time and place of hearing, (2) a hearing before a properly authorized body, (3) a reasonably definite statement of the charge or

charges against him, (4) the right to cross-examine adverse witnesses, (5) the right to produce witnesses in his own behalf, and (6) a full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had.

6. PLEADING — COUNTERCLAIMS — COMPULSORY COUNTERCLAIMS — FEDERAL RULES OF CIVIL PROCEDURE.

To determine whether a counterclaim is compulsory under the Federal Rules of Civil Procedure, the following questions need to be examined: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? and (4) Is there any logical relation between the claim and the counterclaim (FR Civ P 13[a]).

*Eric J. McCann, P.C.* (by *Eric J. McCann*), for plaintiff Charter Township of Orion.

*Honigman, Miller, Schwartz & Cohn* (by *Norman C. Ankers*), for Appeal Investments, Ltd., and Burnac Corporation.

Before: CYNAR, P.J., and SULLIVAN and J. R. ERNST,* JJ.

PER CURIAM. Defendants-appellants, Burnac Corporation and Appeal Investments Limited, appeal as of right the December 3, 1987, order of Oakland Circuit Judge Hilda R. Gage permitting demolition of the Indianwood Condominiums Complex, located in Lake Orion, Michigan. We affirm.

Construction of the complex began sometime in 1973 or 1974. After 2 or 2½ years of work, all construction ceased. No more work has followed to the date of trial (August 31, 1987). Plaintiff attempted to have the then owners complete the project. Two consent agreements were entered into

* Circuit judge, sitting on the Court of Appeals by assignment.

with respect to the completion of the buildings. Neither of the consent agreements have been honored.

As a result of no progress on the completion of the complex, the township filed suit in August, 1979, seeking to demolish the complex as a means of abating a nuisance. On January 20, 1982, the circuit court ordered that the structures be demolished. This Court affirmed. *Orion Twp v Preferred Realty Co, Inc,* unpublished opinion per curiam of the Court of Appeals, decided October 3, 1984 (Docket No. 68182), lv den 422 Mich 979 (1985), reconsideration den January 15, 1986.

Subsequently, appellants filed suit in federal district court in 1985, seeking a declaratory judgment that they were denied due process in the state court proceedings because appellants had not been named in the state suit. Apparently, Appeal Investments had assumed ownership of the complex by foreclosing on the mortgage from the previous owners, Low Burn Incorporated. Appeal Investments then merged with Burnac. The federal district court granted summary judgment in favor of appellants finding that they had been denied due process of law by lack of notice and an opportunity to be heard. The district court also permanently enjoined enforcement of the 1982 demolition order until appellants were accorded due process. In addition, the parties in the federal court action stipulated to the dismissal of all claims and counterclaims without prejudice. An order to that effect was entered on December 17, 1986.

The instant case went to trial on August 31, 1987, before Judge Gage. The first witness on behalf of plaintiff was the township supervisor, Joanne VanTassel. In her opinion, the five buildings were in worse shape at that time than they

had been in 1979. She visited the site in June, 1987, and noticed that the site was not enclosed on all sides by a fence and was open to trespassers. She saw evidence of vandalism, including damaged walls, fixtures that have been removed, markings on the walls and broken glass. Numerous complaints have been lodged by nearby residents and adjoining landowners. Although the land values in the township have generally increased since the late 1970s, the property assessment of the complex has not changed. The deteriorating buildings of the complex have adversely affected the township and held the township up to public ridicule in the newspapers.

Glen Bartoni, the township's building official, testified that there was no current building permit for the complex. Bartoni had sent appellants a notice of unsafe structures on April 8, 1987. Bartoni had inspected the site several times and he was especially concerned about the unfinished buildings that were really open basements full of debris and the other buildings that had broken basement windows. He did not believe that the buildings were salvageable because the foundations were deteriorating.

Bartoni described building one as ninety-five percent complete, but the beam supporting the roof was beginning to fail because of rotting. In addition, the building lacked proper flashing, which had damaged the dry wall because water was seeping in. There was evidence of vandalism. The fence on the south side of the complex was down and there were other openings in the fence. Many windows were broken and broken glass was strewn about.

The final witness for the township was John Hughdock, a licensed residential builder and building inspector. At that time, he was employed as a

building inspector for the Cities of Bloomfield Hills, Huntington Woods and Pleasant Ridge. On June 17, 1987, he visited the complex and inspected the construction of the condominiums. He described building one as ninety to ninety-five percent complete. The building had a problem with flashing on the roof since there was evidence of water leaking into the structure. He found clothes laying around, empty wine bottles, graffiti on the walls, and evidence of vandalism: to wit, missing cabinets, a missing water heater and ripped out pipes.

Buildings three and four were only basement walls with plywood decks on top. The decks were "shot" because of the accumulation of snow and ice for several years. There were cracks in the foundation walls, dirt floors and Hughdock believed that the buildings were not usable in their current condition. He opined that it would be cheaper to start over.

Buildings two and five were in the rough construction stage, with a roof on five and the exteriors of both enclosed. The first floor in five had rotted along with some of the headers (beams over and around the doors and windows). There were cracks in the basement walls. Building five would have to be torn down. Building two was described as having cracks in the foundation, windows and basement walls. The roof of two was sagging and the floors were spongy so that a person could fall through. On cross-examination, Hughdock admitted that he only visually inspected the buildings and that building one was not in any danger of collapse.

Appellants presented three witnesses in defense. Fernando Souto, a civil engineer whose specialty was soil and foundation engineering, investigated

the foundation walls of the complex and took core samples from the walls.

Souto stated that there were other ways short of demolition that could render the buildings suitable and safe for their intended use. He testified that building one was not in imminent danger of collapse. The cracks in the foundation were not structurally serious and could be filled in with epoxy injections.

Building two was also not in imminent danger of collapse. If the settlement of the foundations was not moving, the cracks could be repaired by use of grout to seal them and epoxy injections, along with installation of foundation subdrains. Building three's foundations were not in imminent danger of collapse, but portions of one of the foundation walls and one of the great beams would have to be removed and replaced. Building four was also not in imminent danger of collapse and the existing foundation cracks could be sealed with grout and epoxy. Building five had suffered the most damage. The basement walls would need to be supported with temporary shoring.

On cross-examination, Souto admitted that there was a potential for collapse especially in buildings two and five. Buildings three and four had unsafe floors to walk on. Trees were growing in building four.

Dr. Isaac Sheppard, Jr., a professional engineer, testified that he inspected the complex three times over the past two to three years prior to trial. Building one was not in imminent danger of collapsing within a month, but he could not say if it would collapse within six months. A variety of cosmetic repairs were needed on building one. Building two's framing was rotted and needed to be done in a workmanlike manner. The floors in buildings three and four needed to be removed and

replaced. In building five, the laminated plywood should be removed and replaced along with the rotted joists and studs. Sheppard did not think that general demolition was necessary. On cross-examination, he stated that the covering over the basements was not safe to walk on and a person had a reasonable chance of falling through.

The final defense witness was Frank Presto, a self-employed licensed builder. Presto was in charge of safekeeping the site for defendants. He had repaired the fence and put holes in the walls of one of the buildings to repair the plumbing. On cross-examination, Presto admitted that he did not know if some parts of the fence were up. At this point, the defense rested.

After visiting the site, the trial judge issued her opinion on September 29, 1987. The crux of her opinion stated:

> Therefore, this Court orders that the plaintiff, CHARTER TOWNSHIP OF ORION, may demolish the condominiums at the expense of the defendants unless the defendants do the following:
>
> 1. The defendants shall immediately post at least one security guard on the premises 24 hours per day, seven days a week. A security guard shall continue on the premises until further order of this Court.
>
> 2. The defendants shall immediately commence enclosing the buildings by a continuous chain link fence, which fence must be completed within 14 days from the date this opinion is issued.
>
> 3. Within 63 days from the date of this opinion is issued, the defendants shall complete the following repairs:
>
> A. The basements for buildings 3 and 4 shall be filled in with dirt, sand or gravel;
>
> B. All broken windows in buildings 1, 2 and 5 shall be repaired and locked, or shall be securely boarded over;

C. All exterior doors, sliding doors and garage doors shall be repaired and locked, or shall be securely boarded over;

D. All incompleted window openings, exterior doorways, sliding doorways and garage doorways shall be completed and locked, or shall be securely boarded over;

E. Any holes in any exterior walls shall be repaired.

4. Within 6 months from the date this opinion is issued, the defendants shall complete any repairs necessary to make the buildings marketable, habitable, and in compliance with Orion Township building code or ordinances, including the installation of any necessary plumbing, plumbing fixtures, electrical wiring, electrical fixtures, but not including installation of large appliances such as refrigerators, stoves, etc.

5. In lieu of making repairs required under paragraphs 3 and 4, the defendants may voluntarily raze any building or buildings, within 63 days.

If defendants fail to comply with any of the first four paragraphs, plaintiff may commence demolition immediately. Plaintiff shall prepare a judgment in conformance with this Opinion.

Judgment was entered on November 6, 1987, containing the conditions quoted above. An order permitting demolition was entered on December 3, 1987, from which appellants appeal as of right, raising three issues.

First, appellants allege that the only remedy which the trial court might have properly ordered is the installation of a six-foot fence around the complex. Fear of a possible injury is not enough to sustain a finding that there is a health hazard entitled to abatement in the form of demolition of the complex.

The trial court found that the current condition of the condominium project constituted a nuisance.

We review the findings of a court of equity de novo. We will sustain the findings unless convinced that had we heard the evidence in the first instance we would have been compelled to reach a contrary result. *Emerson v Arnold (After Remand)*, 92 Mich App 345, 357-358; 285 NW2d 45 (1979). In *Eyde Bros Development Co v Roscommon Co Bd of Road Comm'rs*, 161 Mich App 654, 670; 411 NW2d 814 (1987), this Court discussed the power of an equity court to abate a nuisance:

> In general, a court of equity has the power to enjoin a nuisance. *Norton Shores v Carr*, 81 Mich App 715, 724; 265 NW2d 802 (1978), lv den 403 Mich 812 (1978). It is the policy of the courts to tailor the remedy to the problem and, where possible, to abate the nuisance without completely destroying legitimate activity. *Norton Shores, supra.*

The meaning of the term "nuisance" has been previously explained by this Court in *Martin v Michigan,* 129 Mich App 100, 108; 341 NW2d 239 (1983), lv den 422 Mich 891 (1985):

> There are two categories of nuisances: nuisances per se and nuisances in fact. The latter category is further divided into intentional nuisances and negligent nuisances. *Gerzeski v Dep't of State Highways* [403 Mich 149; 268 NW2d 525 (1978)]. A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances. Thus, the existence of a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law. The defendant's liability is established at that point. *Ford v Detroit* [91 Mich App 333, 335; 283 NW2d 739 (1979)].
> In contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings, and an act may be found to be a nuisance in fact where its natural tendency is to create danger and inflict

injury to person or property. The existence of a nuisance in fact is a question for the trier of fact, which may or may not find the existence of a nuisance from proof of the act and its consequences. *Ford v Detroit, supra,* pp 335-336.

The locality and surroundings of the challenged operation or thing become an important factor in arriving at a proper judicial decision of the existence or nonexistence of an actionable nuisance in fact. That which is actionable or abatable in one place or locality may not be in another. *Obrecht v National Gypsum Co,* 361 Mich 399, 417; 105 NW2d 143 (1960).

In this case, the trial court's finding that the complex constitutes a nuisance is not clearly erroneous. MCR 2.613(C). All the testimony, including that from defense witnesses, supports this finding. It is clear that the complex has been in a state of disrepair for over twelve years. There is a hole in the fence which is an invitation for unwary children and adults to trespass on the premises. In fact, evidence was presented indicating that there had been trespassers. Appellants' argument that no one has seen any trespassers does not negate the fact that trespassing takes place. There was evidence of clothing and empty wine bottles left on the property. In addition, the complex had been subject to repeated acts of vandalism, including broken windows and removal of certain items from the complex, especially from building one. Based on the testimony presented, we are not compelled to reach a contrary result. The trial court's finding of a nuisance is not clearly erroneous.

Appellants further argue that, even if the property is a nuisance, demolition is too drastic a remedy. They propose that the installation of a six-foot fence would alleviate any potential dan-

gers. In support, they rely on *Comm'r of State
Police v Anderson,* 344 Mich 90; 73 NW2d 280
(1955). In *Anderson,* the commissioner of state
police filed a petition for an order to show cause
why defendant should not abate a fire hazard by
razing the building and removing all rubbish and
debris from the premises. The commissioner al-
leged that the building constituted a fire hazard
under the fire prevention act, 1941 PA 207. The
trial court ordered demolition. On appeal, the
Supreme Court reversed, stating:

> As plaintiff concedes, this statute must be ad-
> ministered with caution. The remedy prescribed
> should be no greater than is necessary to achieve
> the desired result. It was shown that the principal
> and only source of fire would be from trespassers
> or vandals. To say that the houses are old and
> dilapidated does not alone justify their razing or
> make them a nuisance. See 9 Am Jur, Buildings,
> § 40, pp 234, 235; 39 Am Jur, Nuisances, § 77, p
> 354. Defendant has offered to remove any inherent
> fire hazards. Defendant has also offered to board
> up the windows and in fact states in his brief that
> it has already been done. . . .
> It has been decided in a number of cases that
> something less than destruction of the entire
> building should be ordered where such will elimi-
> nate the danger or hazard. See 14 ALR2d 92; 9
> Am Jur, Buildings, § 40, p 236. The need for
> repairs and alterations does not in this case consti-
> tute the fire hazard and therefore it is not neces-
> sary that we order them. The purpose of the
> statute is to eliminate the hazard, not to make the
> houses tenantable. This purpose can best be
> achieved in this instance by action less drastic
> than razing. [344 Mich 95-96.]

While we agree with appellants that demolition
is a drastic remedy and should be ordered in those
circumstances where it is necessary to eliminate

the hazard, we do not find that, in this case, the remedy was inappropriate. Before demolition was ordered, the trial judge initially gave appellants the opportunity to avoid demolition by making certain repairs as prescribed by the court's September 29, 1987, opinion. Unlike in *Anderson, supra,* where defendant did make certain repairs to avoid possible fires, in our case, appellants failed to take any of the measures ordered by the trial judge. Installation of a six-foot fence would not alleviate the dangerous conditions on the property. As was brought out at trial, a fence is present around a part of the complex. Nevertheless, the property continues to be vandalized since the fence has a gaping hole which permits trespassers to enter. Therefore, we affirm the court's order of demolition.

Secondly, appellants claim that the trial court committed error by not requiring the township to follow the provisions of the Housing Law, MCL 125.401 *et seq.*; MSA 5.2771 *et seq.* Specifically, appellants claim that the township was required to comply with MCL 125.538; MSA 5.2891(18) through MCL 125.542; MSA 5.2891(22). Appellants argue that they were entitled to an administrative hearing in accordance with the Housing Law before demolition may be ordered. Appellants argue that the failure to afford them this hearing violated their due process rights.

In quoting from various cases, the Supreme Court in *Napuche v Liquor Control Comm,* 336 Mich 398, 403-404; 58 NW2d 118 (1953), stated the requirements of what constitutes due process of law:

"Due process of law requires notice and opportunity to be heard. It imports the right to a fair trial of the issues involved in the controversy and a

determination of disputed questions of fact on the basis of evidence." *Dation v Ford Motor Co*, 314 Mich 152, 167 (19 NCCA NS 158) [22 NW2d 252 (1946)].

\* \* \*

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." *Morgan v United States,* 304 US 1, 22 [58 S Ct 773; 82 L Ed 1129 (1938)].

"Unless the right is waived, the person charged is at least entitled to:

"(1) Notice of a time and place of hearing.

"(2) A hearing before a properly authorized body.

"(3) A reasonably definite statement of the charge or charges preferred against the accused.

"(4) The right to cross-examine the witnesses who testify against him.

"(5) The right to produce witnesses in his own behalf.

"(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had." *Hanson v State Board of Registration in Medicine,* 253 Mich 601, 607 [236 NW 225 (1931)].

See also *Geftos v Lincoln Park,* 39 Mich App 644; 198 NW2d 169 (1972), lv den 387 Mich 799 (1972).

In this case, it can hardly be argued that appellants were not afforded due process of law prior to the issuance of the demolition order. The appel-

lants have taken this issue not only in state court, but in federal court as well. Appellants have been afforded numerous opportunities to present their case on why demolition should not be ordered. We find no due process violation.

Finally, we reject appellants' argument that the case should have been dismissed for not being asserted as a compulsory counterclaim in the prior federal court litigation.

Federal Rule of Civil Procedure 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

In *Continental Federal Savings & Loan Ass'n v Delta Corp of America,* 71 FRD 697, 701 (WD Ok, 1976), the court set forth four questions that must be examined in order to determine whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence

support or refute plaintiffs' claim as well as defendants' counterclaim? and (4) Is there any logical relation between the claim and the counterclaim? See Wright and Miller, Federal Practice and Procedure, Civil § 1410, Ch. 4, p. 42 and cases cited.

In this case, application of the four questions compels us to conclude that the instant suit is not a compulsory counterclaim. The facts and law in the federal court were focused on a due process claim by appellants. The alleged counterclaim is that the complex is a nuisance. Thus, the facts and law are not the same. In addition, res judicata would not bar plaintiff's claim since the federal action was dismissed without prejudice, and there was no adjudication on the merits. The same evidence would not support or refute the main claim and the counterclaim. Finally, the two claims are not logically related even though they both involve the condominium complex.

Affirmed.