# STATE OF MICHIGAN

# COURT OF APPEALS

BEN JOSEPH BURKHART TRUST,

        Plaintiff/Counter-Defendant-
        Appellant,

and

KENT W. BURKHART, Trustee,

        Third-Party Defendant-Appellant,

v

DANIEL CRAMER and HANDICRAFT, LLC,

        Defendants/Counter-
        Plaintiffs/Third-Party Plaintiffs-
        Appellees.

UNPUBLISHED
June 13, 2017

No. 330609
Washtenaw Circuit Court
LC No. 14-000392-CH

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

This case is the latest installment of a decade's long property dispute. The Ben Joseph Burkhart Trust owns property at 336 E. Washington St., Ann Arbor, Michigan (Trust property). Kent W. Burkhart is the trustee. Handicraft, LLC, owns property at 327-341 E. Liberty St., Ann Arbor, Michigan (Handicraft property). Daniel Cramer is a member of Handicraft and part owner of the Handicraft property.

The instant dispute arose from the parties' respective uses of an alley on the properties. The Trust filed suit against Handicraft and Cramer alleging claims of prescriptive easement, injunctive relief, trespass, nuisance in fact, and quiet title. Handicraft and Cramer filed a counterclaim against the Trust seeking a declaratory judgment and a third-party complaint against Kent seeking a permanent injunction. Handicraft and Cramer then moved for summary judgement on its request for declaratory relief and on all of the Trust's claims pursuant to MCR 2.116(C)(10).

The trial court granted Handicraft and Cramer a declaratory judgment, in part, and granted summary disposition for Handicraft and Cramer on the Trust's claims for injunctive

-1-

relief, trespass, and quiet title. The trial court held a bench trial on the remaining claims. Afterward, the trial court dismissed the Trust's prescriptive easement claim, found that Handicraft and Cramer created a nuisance, and granted the Trust relief on its nuisance claim.

The Trust and Kent appeal as of right. We affirm in part, reverse in part, and remand.

## I. FACTS

Kent's relatives have owned the Trust property for decades. Kent's great-aunt Caroline Wagner owned the property in 1940. Wagner conveyed the property to Kent's parents, Ben and Laura Burkhart. The property was placed in a trust, which Kent began managing in 2009. A warranty deed describes the property as "[t]he West half of lot number seven" at the corner of East Washington and Division. Significantly, the Trust's lot contains a garage.

The Handicraft property consists of part of lots 9 and 12 and all of lots 10 and 11. Handicraft Furniture Co.[1] had a property interest in lots 10 and 11 as of October 8, 1940. Then, Handicraft shared property interests with the Lepard family. In 1967, Amelia P. Raiser's estate conveyed a portion of lots 9 and 10 to Handicraft Furniture Co. and Sara W. Lepard as tenants in common. Sara conveyed property to Handicraft Furniture Co. later in 1967. Handicraft purchased the remainder of the Handicraft property from Lepard Liberty Partnership in 1996.

At all relevant times, either Division Street Parking, LLC, or First Division, LLC, owned "Lot 8 and the east half of Lot 7, directly north of the Handicraft Property."

The exhibit below shows portions of the properties:

---

[1] Cramer suggests that Handicraft Furniture Co. is a *different* company that is unaffiliated with Handicraft, LLC. The record does not clearly establish the relationship between the companies.



A series of agreements created a 12-foot wide driveway that extends from the western edge of the alley on the Trust property and lot 11 of the Handicraft property to the eastern edge of the alley on lots 8 and 9. This driveway provides the garage its only access to Division Street.

Significantly, Wagner and Handicraft granted each other express easements for rights of way in 1940. Wagner "grant[ed], bargain[ed], s[old], release[d], remise[d] and forever quit claim[ed] unto" Handicraft and "its successors and assigns, a right of way upon, over and across the south 6 feet of the west half of lot 7, . . . to be used in common with the owner or occupant of said land." Handicraft "grant[ed], bargain[ed], s[old], remise[d], release[d] and forever quit claim[ed] unto" Wagner "and to her heirs and assigns forever, a right of way upon, over and across the north 6 feet of the west half of lot 10" and "a right of way upon, over and across . . . the east 21 feet of lot 11" "to be used in common with the owner or occupant of said land." (Emphasis in original.) This sketch from the trial court record shows the driveway:



Handicraft stated that a rear loading dock was built in a Handicraft building near the western edge of the alley in the 1960s. The owners of the Trust and Handicraft properties had disputes over the use of the rear loading dock, and how that use impacted access to the driveway and garage, in the 1960s, 1970s, and 2000s.

Significantly, the trial court stated that Cort Business Services Corporation rented the space at 341 E. Liberty on the Handicraft property in 2007. *Cort Business Servs Corp v Burkhart*, unpublished order of the Washtenaw Circuit Court, entered February 14, 2007 (File No. GCW-05-1022-CH), p 2. Cramer testified that Kent was "harassing" Cort's customers. Cort filed suit against Kent. The trial court enjoined and restrained Kent "from having any contact with the customers and/or employees of Cort . . . regarding vehicles in the parking area, loading dock, and access easements at the rear of 341 E. Liberty." *Id*. at 1-2. Additionally, the trial court enjoined and restrained Cort and its "officers, agents, servants and employees, and those persons in active concert or participation with them . . . from allowing customers, suppliers, vendors or employees . . . to park on that area at the rear of said business location known . . . as the 'ingress—egress easement area.' " *Id*.[2]

In the instant dispute, the Trust claimed that Handicraft and Cramer blocked access to its garage. Kent swore that "various obstacles" have been in front of the rear dock "almost on a daily basis" for "very long periods" of time, including overnight. Amy Balogh testified that she

---

[2] The trial court defined the ingress/egress area as "the orange area on the attached drawing but more specifically described in the title documents." *Id*. The photo attached as part of the record in this case is black and white and, therefore, contains no orange area.

rents an apartment on the Trust property and parks in the Trust garage. Balogh stated that she is often blocked from accessing the garage because objects are left in the alley or trucks are "parked" or left unattended in the alley. Additionally, the Trust and Kent claimed that entering and exiting the garage requires driving on portions of the Handicraft property outside of the driveway, as described below. Finally, the Trust claimed that Handicraft caused water to drain onto its property. Cramer testified that Handicraft resurfaced the six foot portion of the driveway on the Handicraft property in late August 2014 or early September 2014 because the area was worn and had broken concreate that allowed for puddling of water. Additionally, Cramer explained that Handicraft opened a plugged drain near the rear loading dock. Kent stated that Handicraft altered the surface of its property, which "raised the grade" of the area so that the Handicraft property sloped toward the Trust property and caused water to flow into the garage.

Accordingly, the Trust filed suit against Handicraft and Cramer seeking injunctive relief to prevent Handicraft and Cramer from obstructing its rights of ways. The Trust then brought a claim for trespass, claiming that Handicraft and Cramer trespassed on the Trust's property and in the "rights of ways." The Trust brought another claim for quiet title and asked the trial court to enter declaratory judgment finding that the Trust had a prescriptive easement over property at "[t]he north 12 feet of Lot 9 and the north 12 feet of the east half of Lot 10 together with the north 12 feet of the west half of Lot 10." The Trust also brought a claim for nuisance in fact.

Handicraft and Cramer filed a counterclaim against the Trust seeking a declaratory judgment ruling that the Trust's interest in the alley is limited to the recorded documents and that Handicraft may load/unload in the alley.[3] Handicraft and Cramer then moved for summary disposition on its claim for declaratory relief, seeking "an order declaring that the Easement does not prohibit Handicraft, or its tenants, from using the Easement, Alley, and Right of Way for loading and unloading of delivery vehicles." Ultimately, the trial court granted Handicraft's and Cramer's request for declaratory relief in part, stating that Handicraft can use any of its property so long as it "does not unreasonably interfere with [the Trust's] ingress and egress," stating that the express easement did not prevent Handicraft or its tenants "from the active loading and unloading of delivery vehicles in the Right of Way," and allowing the activity.

Handicraft and Cramer also moved for summary disposition on all of the Trust's claims. The trial court ultimately granted the motion in part, dismissing the Trust's injunctive relief, trespass, and quiet title claims.

The case proceeded to a bench trial on the Trust's prescriptive easement and nuisance claims. After trial, the trial court dismissed the Trust's prescriptive easement claim, found that Handicraft created a nuisance in fact, and gave the Trust two options for relief, as explained below.

---

[3] Handicraft and Cramer also sought damages for the cost of maintaining the driveway and an order requiring Handicraft and the Trust to split future costs.

The Trust and Kent moved for an amended judgment or a new trial, challenging the trial court's orders granting Handicraft and Cramer declaratory judgment, the order granting summary judgment for Handicraft and Cramer on the Trust's claims for injunctive relief, trespass, and quiet title, the order dismissing the Trust's prescriptive easement claim, and the ordered nuisance remedy. The trial court denied the motion.

## II. RES JUDICATA

The Trust and Kent argue that, in light of the 2007 order, res judicata bars Handicraft and Cramer's arguments that they can use the alley and the express easement to park, load, and unload and required the trial court to grant the Trust's claims for injunctive relief. We disagree.

The Trust and Kent cited the 2007 order in their complaint and answer to the counterclaim and third-party complaint. The Trust and Kent specifically raised their res judicata argument in the trial court in their motion for an amended judgment or new trial. Therefore, Trust and Kent raised their res judicata arguments in the trial court, preserving them for appeal. *Peterman v State Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

We review de novo whether the res judicata doctrine applies. *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001).

We also review a trial court's decision to grant summary disposition pursuant to MCR 2.116(C)(10) de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Id*. at 120. The moving party must specify issues for which there is no genuine issue of material fact and support the motion. MCR 2.116(G)(4). The nonmoving party then has the burden to provide evidence of a genuine issue of material fact. MCR 2.116(G)(4). The trial court reviews the record in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. A trial court will grant the motion if it finds "no genuine issue as to any material fact" and determines that "the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10).

We review a trial court's decision whether to grant an injunction for an abuse of discretion. *Kernen v Homestead Dev Co*, 232 Mich App 503, 509-510; 591 NW2d 369 (1998). A trial court abuses its discretion when it makes a decision that "is not within the range of reasonable and principled outcomes." *Taylor v Currie*, 277 Mich App 85, 93; 743 NW2d 751 (2007).

"Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999) (internal citations omitted). More specifically, the doctrine applies if four elements are met: (1) the court decided the prior action on the merits, (2) the court previously issued a final decision, (3) both actions involved the same parties or the parties' privies, and (4) the first case resolved or could have resolved the issues in the second case. *Ditmore v Michalik*, 244 Mich App 569, 576; 625 NW2d 462 (2001). The parties asserting the doctrine have the burden to prove each element. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006).

-6-

In this case, the Trust and Kent argue that res judicata barred Handicraft and Cramer from arguing that they could use the alley, and specifically, the express easement to park, load, and unload in light of the trial court's 2007 order in *Cort Business Servs Corp*, unpub order at 1-3. Therefore, the Trust and Kent argue that res judicata prevented Handicraft and Cramer from seeking a declaratory judgment limiting the Trust's interest in the alley and allowing Handicraft to load/unload in the alley. The Trust and Kent also refer to the res judicata doctrine when arguing that the trial court should have granted the Trust's request for injunctive relief to prevent Handicraft and Cramer from obstructing rights of ways by parking vehicles, loading, unloading, dumpster placement, and trespassing over the rights of way on lots 7 and 8.[4]

The Trust and Kent's res judicata argument fails because they cannot prove the fourth element: that the issues in the instant case could have been resolved in the 2007 case. To analyze this element, we use "a transactional test." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 420; 733 NW2d 755 (2007). The two matters "constitute[] a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. (internal quotations and citations omitted). To make this determination, we "pragmatically . . . consider[] whether the facts are related in time, space, origin or motivation." *Id*. (internal quotations and citations omitted).

The evidence and essential facts in the 2007 suit and the instant case are not identical, and the two cases did not did not arise from a single group of operative facts. The order resolving the 2007 suit enjoined and restrained Cort, a former tenant of Handicraft's, and its "officers, agents, servants and employees, and those persons in active concert or participation with them . . . from allowing customers, suppliers, vendors or employees . . . to park on that area at" the rear of 341 E. Liberty, "known . . . as the 'ingress—egress easement area.' " *Cort Business Servs Corp*, unpub order at 1-2. This represents only a portion of the alley and express easement, and the associated activities, involved in the instant dispute. The parties are now disputing the proper use of the area of the alley near 341 E. Liberty *and* use of the drive extending back to the rear dock at the west end of the alley near 337 E. Liberty. Additionally, the parties are now disputing the proper use of the alley for loading, unloading, garbage placement, and other entry onto the Trust property, not just parking.

Therefore, res judicata does not bar Handicraft and Cramer's claim for declaratory relief to allow loading and unloading in the alley. The trial court did not err in granting summary disposition on their request for declaratory relief. Additionally, res judicata did not require the trial court to grant the Trust's claim for injunctive relief. The trial court did not err in granting

---

[4] The Trust and Kent cite no other authority to support their claim of a conflict between the 2007 injunction and the order dismissing the Trust's claim for injunctive relief in the instant case. Appellants "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims." *Green Oak Twp v Munzel*, 255 Mich App 235, 244; 661 NW2d 243 (2003).

summary disposition for Handicraft and Cramer or abuse its discretion in dismissing the Trust's claim for injunctive relief.

## III. EXPRESS EASEMENT

The Trust and Kent argue that the trial court clearly erred in determining the scope of the easement created by the 1940 agreement and that therefore the trial court erred in granting summary disposition for Handicraft and Cramer on their request for declaratory relief. We disagree.

We review a trial court's factual finding regarding the scope of an easement for clear error. *Morse v Colitti*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 328212), slip op at 3. " 'A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made.' " *Id.*, quoting *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). We review a trial court's order granting summary disposition de novo. *Maiden*, 461 Mich at 118.

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). A recorded easement given to a landowner passes onto subsequent purchasers of the land. See *Morse*, ___ Mich App ___; slip op at 3. The easement holder may use the other's land "only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald*, 225 Mich App at 35. The servient landowner may use their land " 'for any purpose not inconsistent with the easement owner's rights.' " *Morelli v Madison Hts*, 315 Mich App 699, 703; 890 NW2d 878 (2016), quoting *Morrow v Boldt*, 203 Mich App 324, 329; 512 NW2d 83 (1994). Stated differently, it may "make any use of the servient estate that does not unreasonably interfere with enjoyment of the" easement. Restatement Property, 3d, Servitudes, § 4.9.

To determine an easement's scope, courts must determine the parties' intent when creating the easement. *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). Courts first examine the easement's text. *Id.* If the text is plain and unambiguous, courts must enforce it as written. *Dyball v Lennox*, 260 Mich App 698, 704; 680 NW2d 522 (2004).

This case involves the scope of an express easement for a right of way. The Michigan Supreme Court in *Murphy Chair Co v American Radiator Co*, 172 Mich 14, 29; 137 NW 791 (1912), held that the "owner of [a] right of way has the right to a reasonably unobstructed passage at all times" and "rights as are incident or necessary to the enjoyment of such right of passage." See also *Kirby v Meyering Land Co*, 260 Mich 156, 168-169; 244 NW 433 (1932), and *Lee v Fidelity Life & Income Mut Ins Co*, 2 Mich App 82, 86-87; 138 NW2d 545 (1965).

In this case, the owner of the Trust property granted the owner of the Handicraft property the following easement: "a right of way upon, over and across the south 6 feet of the west half of lot 7 . . . to be used in common with the owner or occupant of said land." And the owner of the Handicraft property granted the owner of the Trust property the following easement: "<u>a right of way</u> upon, over and across the north 6 feet of the west half of lot 10 . . . <u>to be used in common with the owner or occupant of said land</u>." (Emphasis in original.) The trial court interpreted the

scope of this right of way and granted summary disposition for Handicraft and Cramer's request for declaratory relief, in part, in three orders. Ultimately, the trial court found that Handicraft can use its property so long as it "does not unreasonably interfere with [the Trust's] ingress and egress," found that the 1940 agreement did not prevent Handicraft or its tenants "from the active loading and unloading of delivery vehicles in the Right of Way," and allowed active loading and unloading.

The trial court did not clearly err in finding that the express easement allowed Handicraft to actively load and unload in the right of way so long as it did not unreasonably interfere with the Trust's right to ingress and egress. Preventing unreasonable interference with the Trust's right to ingress and egress corresponds to the plain language of the easement allowing the owner of the Trust property "<u>a right of way</u>. . . <u>to be used in common with the owner or occupant of said land</u>." (Emphasis in original.) The trial court's finding allowed Handicraft, the servient land owner, to use its land for any purpose not inconsistent with the Trust's rights, see *Morelli*, 315 Mich App at 703, and allowed Handicraft to make any use of its land so long as it did not unreasonably interfere with the Trust's enjoyment of the easement, see Restatement, § 4.9. It also allowed the Trust "the right to a reasonably unobstructed passage at all times," the proper scope of an easement for a right of way as outlined in the *Murphy Chair Co,* 172 Mich at 29.[5] Therefore, we do not have a definite and firm conviction that the trial court made a mistake when interpreting the scope of the easement. Thus, we affirm the trial court's order granting summary disposition for Handicraft and Cramer on their request for declaratory judgment.[6]

## IV. TRESPASS

Next, the Trust and Kent argue that the trial court erred in granting summary disposition for Handicraft and Cramer on the Trust's trespass claim because there is at least a genuine issue of material fact regarding the claim. We agree.

Again, we review a trial court's decision to grant summary disposition pursuant to MCR 2.116(C)(10) de novo. *Maiden*, 461 Mich at 118.

A person trespasses when they commit an intentional, unauthorized invasion upon another's private property. *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995). Persons who authorize, condone, ratify, or benefit from another's trespass are joint trespassers. *Kratze v Indep Order of Oddfellows, Garden City Lodge No 11,*

---

[5] The Michigan Supreme Court interpreted the scope of a right of way differently in *Harvey v Crane*, 85 Mich 316, 322; 48 NW 582 (1891), finding that a right of way guarantees the grantee "a right to an unobstructed passage at all times over [the grantor's] land" and "rights as are incident or necessary to the enjoyment of such right of passage." But in light of *Murphy Chair Co*, we find no clear error in the trial court's interpretation of the scope of this right of way.

[6] We do not consider the argument that Handicraft and Cramer lacked a prescriptive easement because the trial court did not conclude that Handicraft and Cramer had a prescriptive easement, and Handicraft and Cramer do not claim a prescriptive easement on appeal.

190 Mich App 38, 43; 475 NW2d 405 (1991), rev'd in part on other grounds 442 Mich 136 (1993). Persons cannot trespass on their own property. *Newcomb v Love*, 112 Mich 115, 117; 70 NW 443 (1897). An easement holder can trespass on land over which they have an easement by intentionally exceeding the scope of the easement. *D'Andrea v AT&T Mich*, 289 Mich App 70, 73; 795 NW2d 620 (2010); *Wiggins*, 291 Mich App at 556.

In this case, the Trust claims that Handicraft and Cramer trespassed on their rights of ways, or in the driveway. The Trust only owns a portion of the driveway on lot 7. The 1940 agreement granted Handicraft a "right of way upon, over and across the south 6 feet of the west half of lot 7 . . . to be used in common with the owner or occupant of said land." Therefore, Handicraft and Cramer could only be liable to the Trust for a trespass committed by exceeding the scope of the express easement on lot 7.

When the trial court ultimately granted summary disposition on the trespass claim, the record contained evidence that Cramer swore that its tenants used both loading docks in the alley and that its tenants used the express easement. Emilie Parker, the manager of Handicraft's tenant at 337 E. Liberty, swore that her store used the rear loading dock. Adam Baru, the owner of the businesses renting Handicraft's property at 341 E. Liberty, swore that commercial delivery vehicles used the alley while loading and unloading. Balogh testified that trucks in the alley have made it difficult for her to enter and exit her garage on multiple occasions. Balogh stated that vehicles parked in the alley and that she has at times been unable to locate a vehicle's driver. Trust tenant Nina Howard wrote a letter indicating that use of both loading docks has prevented her from leaving the garage. Kent swore that "various obstacles" were in the area in front of the rear dock "almost on a daily basis," some of which were present for "very long periods," including overnight. The Trust and Kent provided the trial court with multiple, dated photographs that show multiple vehicles stopped in multiple locations in the alley. Some photos do not show persons or materials.

When viewing this evidence in the light most favorable to non-moving party the Trust, see *Maiden*, 461 Mich at 118-120, we find that there is a genuine issue of material fact as to whether persons exceeded the scope of the express easement on the Trust's property. Exceeding the scope of the easement would constitute a trespass. See *D'Andrea*, 289 Mich App at 73; *Wiggins*, 291 Mich App at 556. Even if this trespass was not committed by Handicraft or Cramer directly, Cramer's knowledge of Handicraft's tenants' use of the easement suggests that Handicraft and Cramer authorized, condoned, ratified, or benefitted from the trespass, making them joint trespassers. See *Kratze*, 190 Mich App at 43. Therefore, we reverse the trial court's order dismissing the Trust's trespass claim and remand for trial.

## V. PRESCRIPTIVE EASEMENT

The Trust and Kent next argue that the trial court erred in denying the Trust's prescriptive easement claim. We disagree.

We review the trial court's factual findings for clear error. MCR 2.613(C). We review de novo the trial court's conclusions regarding the existence of a prescriptive easement. *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007).

A person acquires a prescriptive easement when he or she uses another's property in an "open, notorious, adverse, and continuous" manner for 15 years. *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000). Land use is open and notorious when the landowner has actual knowledge or notice of the use. See *McCracken v MacNeal*, 169 Mich 414, 415-418; 135 NW 461 (1912); *Defnet v Detroit*, 327 Mich 254, 258; 41 NW2d 539 (1950). Land use is adverse when used without the landowner's permission in a manner inconsistent with the landowner's rights, constituting a trespass. *Plymouth Canton Community Crier, Inc*, 242 Mich App at 681. The person asserting a prescriptive easement must prove its existence "by clear and cogent evidence." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010).

In this case, the Trust argues that it has a prescriptive easement for a right of way to access the garage along the north 12 feet of Handicraft's property across lots 9, 10, and 11.

The Trust could not show adverse use of lot 11 or the northern six feet of lots 9 and 10. The Trust has an express easement to use the northernmost six feet of lot 10 and the east 21 feet of lot 11 for a right of way in common with Handicraft. The deed that conveyed Handicraft lot 9, "except[ed] and resev[ed]" the northern six feet of land, indicating that the area was "to be kept open for an alley." These agreements suggest that the Trust had permission to use lot 11 or the northern six feet of lots 9 and 10 for a right of way to its garage. Therefore, the Trust could not show adverse use. See *Plymouth Canton Community Crier, Inc*, 242 Mich App at 681.

The Trust's claim for a prescriptive easement over the remaining area, a six foot wide strip across lots 9 and 10 along the southern edge of the express easement, also fails. The trial court found that the Trust's use of the entire area was not adverse because Cramer testified that he did not see the use and would have permitted the use had he seen it. The trial court did not clearly err in finding that the Trust's use of the area was not open and notorious. Cramer testified that he has never discussed a "claim for an additional six feet" with Kent and that he has never seen Kent or the Trust's tenants use that area. The Trust had the burden to prove open and notorious use, but cited no evidence on appeal proving an open and notorious use of this six foot strip. Therefore, the trial court did not err in denying the Trust's prescriptive easement claim.

## VI. NUISANCE REMEDY

Finally, the Trust and Kent argue that the trial court erred in ordering a remedy for the Trust's nuisance claim that was not properly tailored to abate the nuisance. We disagree.

We review a trial court's findings of fact in an equity proceeding to abate a nuisance for clear error. *Capital Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 430; 770 NW2d 105 (2009). We review the trial court's equitable decisions de novo. *Id*.

A " 'nuisance in fact is a nuisance by reason of circumstances and surroundings' " that can " 'inflict injury to [a] person or property.' " *Orion Charter Twp v Burnac Corp*, 171 Mich App 450, 459-460; 431 NW2d 225 (1988), quoting *Martin v Michigan*, 129 Mich App 100, 108; 341 NW2d 239 (1983). The trier of fact must first determine that a nuisance exists. *Id*. Once it does, the court in equity has the power to enjoin the nuisance. *Id*. The court should "tailor the

remedy to the problem and, where possible, . . . abate the nuisance without completely destroying legitimate activity." *Id.* at 459 (internal quotations and citations omitted).

In this case, Cramer testified that Handicraft resurfaced the portion of the driveway on the Handicraft property in late August 2014 or early September 2014. The trial court found that installing asphalt changed the grade of the driveway from "tilting toward" the existing drain to being "more level" and that "the asphalt on the Handicraft property was directing water toward the [Trust] property." Therefore, Handicraft and Cramer created a nuisance. The trial court then ordered the Trust to choose one of two remedies to abate the nuisance: (a) the Trust could "install a drain and catch basin on its own property that w[ould] tie in with [Handicraft's] existing drain in the alley" within 90 days, or (b) if the Trust chose not to install a drain, Handicraft must "install a low curb 2 1/2 inches in height and 6 inches wide bonded to the existing drive, along the norther border of its property" at its "sole expense." If the Trust chose to install the drain, it must pay for the drain, but Handicraft would be required to reimburse the Trust for up to the cost of the curb. Further, the trial court ordered the parties to both maintain the catch basins on their own property, both maintain the portions of the drain connecting the new drain and catch basin and the old, and requiring Handicraft to pay 85% of the costs of maintaining the connecting portions.

These remedies correspond to the remedies civil engineer Kenneth Cousino suggested at trial. Cousino testified that extending an existing drain near the Trust property to the low area of the Trust property could correct the water problem. Cousino also testified that the water problem could be corrected by installing a "short curb" or speed bump" that "would retain all the runoff from [the] new driveway surface toward the [existing] catch basin, not allowing any of it to go to the [Trust] property."[7] Cousino explained that the curb would reduce water flow to the Trust property from the Handicraft property, but would not reduce water flow from other sources. Kent acknowledged that the Trust property had water problems prior to the repaving, but testified that the repaving exacerbated the problem.

In light of this testimony, the trial court did not err in ordering a remedy to abate the nuisance Handicraft created. The Trust property had water problems before the nuisance, but the nuisance exacerbated them. The curb remedy specifically targeted the problem created by the nuisance. The drain remedy could have corrected the problems created by the nuisance and additional water problems, as reflected in the trial court's decision to split the cost of the drain between the parties. The Trust and Kent cite no evidence on appeal that removing the pavement was necessary to abate the nuisance. Therefore, the trial court ordered a proper remedy that abated the nuisance without destroying the legitimate activity of repaving.

## VII. CONCLUSION

---

[7] Cousino also suggested adding a fitting to a downspout on a Handicraft building.

We reverse the trial court's order granting summary disposition on the Trust's trespass claim and remand for proceedings consistent with this opinion. We affirm all other challenged findings and rulings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell